Sharon POINTER, Appellant–Defendant

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–9109–CR–306.

Court of Appeals of Indiana,
Fifth District.

Jan. 27, 1992.

Aaron E. Haith, Choate Visher & Haith, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Deana M. McIntire, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

BARTEAU, Judge.

A jury convicted Sharon Pointer of voluntary manslaughter,[1] battery,[2] and resisting law enforcement.[3] At trial it was undisputed that the victim, George Knox, died from a stab wound inflicted by Pointer. The trial issues relevant to this appeal were whether Pointer's conduct was excusable as an act of self-defense, and if not, whether her state of mind supported a conviction for murder, or voluntary manslaughter, or involuntary manslaughter. The appeal contends the evidence was insufficient to support the conviction for voluntary manslaughter, and insufficient to negate self-defense.

We affirm.

■ When reviewing appeals asserting insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. Instead, we look to the evidence favorable to the verdict, along with any inferences reasonably drawn therefrom. A verdict supported by substantial evidence of probative value will be affirmed. *Solomon v. State* (1991), Ind.App., 570 N.E.2d 1293.

■ Knox and Pointer lived together in a relationship consistently characterized by the witnesses as one of frequent bilateral altercations, both verbal and physical, and of regular consumption of alcohol, especially by Knox. Prosecution witness Franklin Lawrence, a long-time friend of Knox's, testified that on April 4, 1990, five people gathered in Lawrence's home for what was expected to be a not unusual evening of drinking beer and gin, playing

1. Ind.Code 35–42–1–3.

2. I.C. 35–42–2–1(1).

3. I.C. 35–44–3–3(a).

records, and conversing. The five were Knox, Pointer, Lawrence, his girlfriend Brenda Coach, and one Harding, who departed around the time that Knox passed out from drinking and fell asleep with his head on the table.

Soon after Knox passed out, Pointer reached into his pockets, seeking the keys to his truck, which was parked on the street in front of the house next to Lawrence's, with the passenger side next to the sidewalk. Lawrence testified that he ordered Pointer to stop, and told her that if she wanted to leave she should wake Knox and take him with her. Pointer argued, but Lawrence insisted. Pointer then wakened Knox, who swung his arm against Pointer and told her to go away from him. Pointer stumbled and fell, either from Knox's arm swing or from tripping over a loose carpet edge, and as she stood up, reached in her pants and pulled out a knife. Lawrence ordered her to leave. She put the knife back in her pants, went outside and leaned against the passenger side of the truck cab.

Lawrence then asked Knox to leave. The two men stood in Lawrence's doorway, with Knox expressing dissatisfaction with his relationship with Pointer and his wish that she would move out from the apartment they shared. When Knox then left the house, Lawrence watched him walk past Pointer and to the front of the truck, on the way to the driver's side. Lawrence then diverted his attention to the door, which had faulty hinges. Next, Lawrence looked up and saw Pointer bring out the knife. Knox had his back to Pointer. Lawrence screamed out Pointer's name. Knox turned, stumbled, and fell, ending up supine. Pointer jumped on him, drew back her arm, then stabbed. Lawrence testified that he saw Pointer raise her arm and stab at Knox five or six times, and that Knox was trying to grab Pointer's arm. Coach testified that she saw Pointer straddling Knox, and that Pointer made a stabbing motion six or seven or more times.

Lawrence ran to the street, grabbed a shovel from the back of Knox's truck, and brandished it so as to cause Pointer to stop stabbing. Pointer stood up and walked away. Knox also stood up, and walked into Lawrence's home. Lawrence thought Knox was not badly injured because he was able to walk into the house, was talking, and was bleeding only slightly. However, Knox soon stopped breathing and collapsed. Lawrence administered CPR and revived Knox. Police and paramedics arrived. Knox collapsed again, and was pronounced dead on arrival at the hospital. An autopsy revealed that he had a blood alcohol content of .34%, and that he had suffered two wounds, one a cut in the left front shoulder and one a puncture in the left upper chest. The chest wound proved fatal, as it had penetrated approximately four inches and had cut the large blood vessels above the heart. Pointer was arrested shortly after the stabbing at the apartment she shared with Knox. Her conduct at that time led to the convictions for battery and resisting law enforcement, which have not been appealed.

To knowingly or intentionally kill a human being is murder. I.C. 35–42–1–1(1). To knowingly or intentionally kill a human being while acting under sudden heat is voluntary manslaughter. I.C. 35–42–1–3(a). To kill a human being while committing or attempting to commit battery is involuntary manslaughter. I.C. 35–42–1–4(3). It is apparent from the facts recited above that the jury could have convicted Pointer of any one of the three. In fact, the jury received instructions on all three, and chose to convict on voluntary manslaughter. Pointer's argument that there was insufficient evidence of the intent to kill required to support a conviction for voluntary manslaughter does not wash. The argument fails in light of the well-settled rule that intent to kill can be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Rogers v. State* (1987), Ind., 506 N.E.2d 481, 483; *Mills v. State* (1986), Ind., 498 N.E.2d 1236, 1239, *reh'g denied.* Here, the jury was entitled to infer from the fact that Pointer stabbed Knox in the chest, near his heart, to a depth of several inches, that she specifically intended to kill him. We see in this argument nothing

more than a request that we invade the province of the jury, a request we must deny.

Pointer testified that she acted in self-defense. Her version of the death of Knox was that she had her own keys to the truck, and that her knife was in the truck. She left Lawrence's house and went out to the truck. She was seated behind the wheel of the truck, trying to start it, when Knox came out, walked around to the driver's side and punched her in the eye. Pointer took up her knife and warned Knox to stop, but he punched her again and then grabbed her by the neck and was choking her. So, Pointer stabbed at him about three times. Knox then walked around to the front of the truck, and Pointer assumed he was heading for the passenger side door. Pointer followed Knox to the front of the truck, where he turned and angrily demanded repayment of some money. The two then began fighting again, and Knox knocked Pointer to the ground. Knox got on top of her, so Pointer again tried to stab him. Pointer testified that she had no intention of killing Knox when she stabbed him, but merely wanted to scare him and make him stop hitting her.

■■■ "A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force...." I.C. 35–41–3–2(a). To prevail on a claim of self-defense, a defendant must prove that she was in a place where she had a right to be, that she acted without fault, and that she had a reasonable fear or apprehension of death or great bodily harm. *Lilly v. State* (1987), Ind., 506 N.E.2d 23. To obtain a conviction once self-defense has been raised, the prosecution must disprove the existence of at least one of the three elements of self-defense beyond a reasonable doubt. *Id.* The prosecution may refute self-defense by direct rebuttal, or by relying upon the sufficiency of the evidence in its case in chief. *Id.* The decision whether a claim of self-defense has been disproved is entrusted to the factfinder. *Almodovar v. State* (1984), Ind., 464 N.E.2d 906. A conviction in spite of a claim of self-defense will be reversed only if no reasonable person could say that the claim was negated by the prosecution beyond a reasonable doubt. *Lilly, supra.*

As we see it, Pointer's self-defense testimony was rebutted by Lawrence's testimony, which portrayed Pointer as an initial aggressor who struck an unarmed victim from behind. By Lawrence's testimony, Pointer did not act without fault, and did not have a reasonable fear of personal harm to support the need for self-defense. Thus, the outcome of the trial hinged on whether the jury chose to believe Pointer or Lawrence. By returning a guilty verdict, the jury indicated its disbelief of Pointer's self-defense claim. And, by returning a verdict on voluntary manslaughter rather than involuntary manslaughter, the jury indicated its disbelief of Pointer's testimony that she did not intend to kill Knox. Pointer's appeal invites us to judge the credibility of the witnesses. We must decline the invitation. The jury made the decision, and we see no reason to overturn it. *See Lilly, supra.*

AFFIRMED.

RUCKER and BAKER, JJ., concur.