**Darnell JOHNSON, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9506–CR–365.

Court of Appeals of Indiana.

Oct. 25, 1996.

Transfer Denied Jan. 8, 1997.

Belle T. Choate, Indianapolis, for appellant.

Pamela Carter, Attorney General, James A. Joven, Deputy Attorney General, Indianapolis, for appellee.

KIRSCH, Judge.

Darnell Johnson appeals his conviction for murder.[1] He raises three issues on appeal which we restate as:

I. Whether evidence of Johnson's prior bad acts was properly admitted.

II. Whether evidence of the victim's character was properly excluded.

III. Whether the evidence was sufficient to support the murder conviction.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the conviction are as follows: On the evening of July 26, 1993, the victim, Jerry Emmert, and several

---

1. *See* IC 35–42–1–1.

of his friends, rented a limousine for the evening and visited the Patio Nightclub in Indianapolis. At the Patio, Emmert had an altercation with the doorman and the manager, and the police were called. Police allowed Emmert to leave in exchange for his companions' promise to take Emmert straight home. Notwithstanding their promise, the group went to a nearby Taco Bell Restaurant. While they were attempting to place an order in the drive-thru lane, an automobile carrying Johnson, Charles Zinnerman, and the driver, Eric Hunt, pulled into the drive-thru lane behind them. Because the music coming from Hunt's automobile was loud enough to prevent the completion of their order, the limousine driver moved the vehicle forward to the pick-up window.

Shortly thereafter, some of the occupants in the two vehicles exchanged angry words about the music. Hunt and Johnson exited Hunt's vehicle, and Emmert, Julia Maddox, Bruce Walker, and Brad Reynolds exited the limousine. Inside Taco Bell, the manager, Ramona Johnson (no relation to Darnell), told an employee, Anthony Price, to take a gun out to the group from Hunt's car. Price did so and handed the gun to Johnson. The verbal exchange between Emmert and Johnson continued, and Johnson raised the gun and unsuccessfully attempted to fire it. Johnson then lowered the gun, adjusted the clip, raised it and fired several shots at Emmert, striking him repeatedly. Emmert died shortly thereafter.

After a jury trial, Johnson was convicted of murder and possession of a handgun without a license.[2] This appeal followed.

## DISCUSSION AND DECISION

### I. Admission of Evidence

### A. Admission of Johnson's Prior Misconduct

■ Johnson claims that the trial court erroneously admitted evidence of prior incidents of his fighting. We agree.

■ The admission or exclusion of evidence is a matter left to the sound discretion

of the trial court, and we will reverse only upon abuse of that discretion. *Hackney v. State*, 649 N.E.2d 690, 692 (Ind.Ct.App.1995), *trans. denied.* Ind.Evidence Rule 404(b) governs the admission of uncharged misconduct, also referred to as prior bad acts. The Rule permits the admission of such evidence as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(b). Such evidence, however, is not admissible to prove a person's character for the purpose of showing action in conformity therewith. Evid.R. 404(b).

■ Before admitting evidence of prior bad acts, the trial court must determine: (1) whether the evidence may be admitted for the purpose acceptable under Rule 404(b); and, if so, (2) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under Ind.Evidence Rule 403. *Brown v. State*, 659 N.E.2d 652, 655 (Ind.Ct.App.1995), *trans. denied* (1996). Exceptions to the general rule against uncharged misconduct must be applied with caution. *Penley v. State*, 506 N.E.2d 806, 808 (Ind.1987). In *Penley*, our supreme court warned of the danger associated with admitting evidence of uncharged misconduct stating:

> "The notion that the State may not punish a person for his character is one of the foundations of our system of jurisprudence. Evidence of misconduct other than that with which one is charged ('uncharged misconduct') will naturally give rise to the inference that the defendant is of bad character. This, in turn, poses danger that the jury will convict the defendant solely on this inference."

*Id. See also* Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 1:02 at 4 (1984–1991) (noting that uncharged misconduct evidence could weigh heavily against a defendant even becoming a dispositive factor in conviction).

Applying these considerations to the present case, the evidence satisfies neither prerequisite to admission. The trial court granted Johnson's pre-trial motion in limine

---

**2.** *See* IC 35–47–2–1. Johnson does not appeal the handgun conviction.

regarding his juvenile record of fighting. At trial, the State sought, and received, relief from the motion in limine which permitted the State to ask Johnson on cross-examination about four prior incidents of fighting.[3] During argument concerning the admission of the fighting incidents, the prosecutor stated his reasons for offering the evidence:

"[PROSECUTOR]: And all [four] of these incidences [sic] that we're referring to involve, at least in our opinion, *a character trait of aggression.* ... the defense was allowed to present evidence in that regard concerning Jerry Emmert [the victim] ... and it's, you know, it's our position that the rules control and if the defense wants to use that type of evidence, which they've been allowed to do, then the State certainly should be entitled to it because *the rules don't recognize the distinction between defendant and—the rights of defendants and the rights of the State.* ... And, in addition, *404(b) allows evidence of other wrongs to show not only action and conformity there,* but also motive, intent, identity or absence of mistake or accident. And, Judge, I can think of absolutely no way, especially under these new rules, that that evidence should be excluded, especially in light of the Defendant's posture in presenting the evidence with regard to the aggressive nature of Mr. Emmert. I think we have the same right and the rules give us that right.

[COURT]: What you're saying is if they can—if defense can be allowed to talk about Mr. Emmert wanting to [fight] Mr. Ball and Mr. Schafer up at the Patio to portray him as an aggressive person, and you think the State ought to have the same right concerning Darnell Johnson?

[PROSECUTOR]: Yes, Judge.... I believe the rules give us the right to submit

evidence either on cross examination of the Defendant or on rebuttal to establish that *that character trait, whether it be one for peacefulness or lack of aggression,* whatever you want to call it, *is disproved by other uncharged misconduct ...."*

*Record* at 1651–55 (emphases added). This exchange between the prosecutor and the trial court reveals the source of the erroneous admissions.[4]

The State's purpose for introducing the uncharged misconduct was to show Johnson's character trait of aggression, not as proof of motive, identity, plan, intent, or any of the other approved purposes under Rule 404(b). In effect, the State attempted to create in the minds of the jurors the "forbidden inference" that because Johnson had acted aggressively on prior occasions, that he acted in conformity with those prior incidents in his confrontation with Emmert. Prior bad act evidence may not be admitted for that purpose. *Poindexter v. State,* 664 N.E.2d 398, 400 (Ind.Ct. App.1996). Therefore, the trial court erred.

■ The prosecutor's statements also reveal a failure to understand that the rules recognize a distinction between a defendant and the State. Ind.Evidence Rule 404(a) forbids the introduction of character evidence or a trait of character to show action in conformity therewith on a particular occasion. Subsections (a)(1)-(a)(3) provide well-defined exceptions to the general rule. *See* Evid.R. 404(a)(1) (permitting accused to admit evidence of a pertinent trait of character and then allowing rebuttal evidence by the prosecution); -(a)(2) (permitting accused to admit evidence of victim's pertinent character trait and then permitting rebuttal evidence by prosecution); -(a)(3) (permitting character evidence of witnesses subject to Rules 607, 608, 609). Rules 404(a)(1–2), thus

---

**3.** The court also permitted the State to inquire about Johnson's conviction as an adult for criminal conversion. This was permissible as impeachment evidence under Ind.Evidence Rule 609(a).

**4.** The State asserts that Johnson waived the issue because he failed to object when the State questioned him regarding his prior bad acts. We disagree. Johnson objected to the evidence when the State noted that it would seek relief

from the motion in limine. *Record* at 1657–64. The trial court did not rule on the State's motion at that time. During Johnson's redirect examination, the State again sought relief from the motion in limine. Johnson objected repeatedly. *Record* at 1743, 1755–56, 1759–60, 1773–74. After lengthy argument, the trial court permitted the admission of Johnson's prior bad acts. Johnson's objections were sufficient to preserve the issue for our consideration.

limit the State to rebutting the specific evidence first tendered by the defendant.

If character evidence falls under one of the exceptions in Rule 404(a), Ind.Evidence Rule 405 establishes the methods by which it may be proved. Rule 405(a) permits proof of such evidence by testimony as to reputation, testimony in the form of an opinion, and, on cross-examination only, questions concerning relevant specific instances of conduct. Evid.R. 405(a). Evidence of specific instances of conduct also may be used when character is an essential element of a charge, claim, or defense. Evid.R. 405(b).

Here, the prosecutor incorrectly asserted that because Johnson was allowed to submit some evidence of Emmert's aggressive behavior, that the State then had the right to submit evidence of Johnson's aggressive behavior.[5] Neither Rule 404(a)(1) nor 404(a)(2) support his assertion. The State could not submit evidence regarding Johnson's aggressive behavior to rebut evidence Johnson had submitted as to Emmert's aggressive behavior. Had Johnson introduced evidence of his own character trait for peacefulness, then the State would have had the opportunity to offer rebuttal evidence as to Johnson's peacefulness or to inquire as to relevant specific acts by Johnson on cross-examination. *See* Evid.R. 404(a)(1); Evid.R. 405(a). Because Johnson did not introduce his character into the proceedings, the State, being limited to rebuttal evidence, was precluded from introducing such evidence. *See Berkley v. State,* 501 N.E.2d 399, 401 (Ind.1986) ("[M]erely asserting self-defense is not equivalent to asserting a propensity to act in self-defense in a similar situation, nor does such an assertion automatically put defendant's character in issue."). Therefore, the trial court erred in admitting evidence of Johnson's prior fights.

### B. Harmless Error

■ Having found error in the admission of Johnson's prior bad acts, we now undertake an analysis of the prejudicial impact of such evidence. The erroneous admission or exclusion of evidence is deemed

harmless unless such error affected the substantial rights of the parties. Ind.Trial Rule 61; *Fleener v. State,* 656 N.E.2d 1140, 1141 (Ind.1995). In determining whether reversal is merited, reviewing courts must assess the probable impact of the improper evidence upon the jury. *Fleener,* 656 N.E.2d at 1142; *Bonner v. State,* 650 N.E.2d 1139, 1141 (Ind. 1995); *Griffin v. State,* 664 N.E.2d 373, 376 (Ind.Ct.App.1996). Reversal is warranted if the record as a whole reveals that the improper evidence was likely to have had a prejudicial impact on the average juror such that it contributed to the verdict. *Bonner,* 650 N.E.2d at 1141. The erroneous admission of evidence is harmless when there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction. *Carson v. State,* 659 N.E.2d 216, 219 (Ind.Ct.App.1995).

Here, there was substantial independent evidence supporting Johnson's conviction for murder and disproving his claim of self-defense. Julia Maddox testified that Emmert, who had exchanged words with Johnson, was standing about ten feet away from Johnson when he was shot several times in rapid succession. Maddox further stated that Emmert was not moving toward Johnson when he was shot. Bruce Walker stated that after he exited the limousine, Johnson pointed the gun at him and attempted to fire. When the gun did not discharge, Walker testified that Johnson put the gun down and adjusted it. When Johnson brought the gun back up, he shot Emmert several times. Walker also noted that Emmert did not have any weapons.

Anthony Price testified that when he handed the gun to Johnson, Johnson said, "Thank you, I'm going to pop him." *Record* at 715. Jermaine Peterson, Price's co-worker, testified that when Emmert yelled at Johnson, "Are you going to shoot me mother——?" Johnson replied, "Yeah, hell, yeah." *Record* at 904. Johnson testified that when Price gave him the gun, he said, "Right on." *Record* at 1692. Johnson further stated that

---

5. We discuss separately the admission of evidence regarding Emmert's behavior. *See* discussion *infra* part II.

when he first raised the gun, the clip fell out. He then adjusted the clip, raised the gun again, and shot Emmert.

The coroner's report based on an autopsy of Emmert's body revealed four shots had been fired, with three of the bullets having been recovered. One bullet entered Emmert's upper left arm and lodged in his back. Another bullet entered the right side of his upper back and was recovered in his abdomen. Another bullet entered the right lower flank and exited from the abdomen. The last bullet, which the coroner determined was the fatal one, entered the left side of the back, severed the aorta, and was recovered in his abdomen.[6] Based on the coroner's report, three of the four bullets entered through Emmert's back. Therefore, there was substantial independent evidence of Johnson's guilt.

The problem with evidence of prior bad acts is that the jury will punish the defendant for being a person of bad character or will try the defendant for the prior acts, not for the acts with which the defendant is charged. *See Penley,* 506 N.E.2d at 808. Here, the prejudicial effect of the evidence was minimal because of the type of acts involved and their remoteness in time. First, the erroneous admission involved incidents of fighting which is neither equivalent, nor closely analogous, to murder. There was no evidence that Johnson's prior altercations involved the use of deadly weapons or resulted in bodily injury. If the State had introduced, for example, evidence of Johnson's involvement in a prior homicide, the risk of unfair prejudice would have been far greater. *See Sloan v. State,* 654 N.E.2d 797, 803 (Ind.Ct.App.1995) (holding evidence of prior molestations in a child molesting case was prejudicial); *Bolin v. State,* 634 N.E.2d 546, 550 (Ind.Ct.App.

1994) (holding evidence of prior arson for hire in arson case was prejudicial); *James v. State,* 622 N.E.2d 1303, 1309 (Ind.Ct.App. 1993) (holding evidence of prior drug activity in a drug possession case was prejudicial).

Second, the remoteness in time of such evidence further diminishes any potential for prejudicial impact. The altercations occurred when Johnson was a juvenile, spanning a period from March, 1990, to March, 1992; the last one occurring fifteen months before the events at Taco Bell. In light of the tenuous relation of the evidence to the murder charge and the substantial independent evidence of guilt, it is unlikely that the erroneous admission of Johnson's prior misconduct influenced the jury's verdict; therefore, the admission was harmless error.

## II. Exclusion of Emmert's Prior Misconduct

■ Johnson next asserts that the trial court erred by partly restricting the admission of evidence regarding Emmert's aggressive behavior at the Patio shortly before he went to the Taco Bell. We disagree.[7]

Pursuant to Rule 404(a)(2), Johnson was permitted to introduce evidence of a pertinent character trait of Emmert as well as evidence that Emmert was the first aggressor.[8] The victim's character trait for violence is pertinent to a claim of self-defense. *See Eldridge v. State,* 627 N.E.2d 844, 849 (Ind.Ct.App.1994), *trans. denied.* Proving Emmert's aggressive character, however, could be accomplished only by reputation or opinion testimony. Evid.R. 405(a).

Here, on direct examination, Johnson's counsel questioned two employees of the Patio, Matthew Schaefer and Christopher Ball, concerning an incident that took place shortly before the shooting at Taco Bell. Schae-

---

**6.** The coroner could not determine the sequential order of fire; accordingly, our discussion of the gunshot wounds is not meant to imply that they were fired in that order.

**7.** We note a discrepancy between trial counsel's basis for presenting this evidence and appellate counsel's argument alleging error in its partial exclusion. The former filed a Rule 404(b) notice, apparently seeking to have it admitted as prior misconduct. *Record* at 102. During argument at trial, counsel presented no argument supporting the admission of Emmert's prior misconduct

under any of the exceptions noted in Rule 404(b). Therefore, we address the claimed error as presented by appellate counsel.

**8.** The United States Court of Appeals for the Ninth Circuit, interpreting Fed.R.Evid. 404(a)(2), upon which Indiana's Rule 404(a)(2) is based, held that a victim's violent nature is relevant to a defendant's theory of self-defense. *United States v. Keiser,* 57 F.3d 847, 855 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 676, 133 L.Ed.2d 525 (1995).

fer and Ball testified that Emmert acted aggressively toward them and almost instigated a physical confrontation with them when they would not permit him to reenter the premises. Rather than general reputation or opinion testimony, this refers to a specific incident. Such is permissible only on cross-examination under Rule 405(a), or under Rule 405(b) when character is an essential element of a charge, claim, or defense. Neither situation is present here. Johnson's counsel elicited the specific incident testimony on direct examination, and the fact that Johnson asserted self-defense does not make Emmert's character an essential element of his defense. *Cf. Keiser,* 57 F.3d at 855 (holding that defendant claiming self-defense could introduce character evidence of the victim only by reputation or opinion evidence and could not introduce evidence of specific acts under Fed.R.Evid. 405(b)).[9] Therefore, no reference to specific acts could be made concerning Emmert's character under Rule 405(b). The only error we find with respect to this evidence is that the trial court did not go far enough in restricting its admission against the State, and it could not have resulted in prejudice to Johnson.

### III. Sufficiency of Evidence

Johnson finally asserts that there was insufficient evidence to support his conviction for murder. We disagree.

When reviewing challenges to the sufficiency of the evidence supporting a criminal conviction, we neither reweigh the evidence nor judge witness credibility. *Jellison v. State,* 656 N.E.2d 532, 534 (Ind.Ct.App. 1995). We consider only the evidence most favorable to the judgment, together with all reasonable inferences arising therefrom. *Id.* If there is substantial evidence of probative value supporting the conviction, we must affirm. *Id.*

In order to prevail on a claim of self-defense, the defendant must show that he was in a place where he had a right to be, did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of death or great bodily harm. IC 35–41–3–2(a); *Jordan v. State,* 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Once the defendant has raised self-defense, the burden falls upon the State to disprove one of the elements beyond a reasonable doubt. *Moore v. State,* 634 N.E.2d 825, 826 (Ind.Ct.App.1994).

Here, the evidence revealed that Johnson willingly participated in the violence by taking possession of the gun from Price and stating his intention to "pop" Emmert. It further reveals that Emmert was standing approximately eight-to-fifteen feet away from Johnson when he was shot. Finally, it revealed that Emmert did not have a weapon, did not make an aggressive move toward Johnson, and that Johnson shot Emmert in the back several times. This was more than enough to disprove Johnson's self-defense claim. *See Jordan,* 656 N.E.2d at 817–18 (Ind.1995) (affirming murder conviction despite defendant's self-defense claim when victim was shot in the back and defendant was the first to display a weapon); *Kimble v. State,* 569 N.E.2d 653, 655 (Ind.1991) (affirming murder conviction despite defendant's self-defense claim when victim did not have a weapon and several bullets entered victim's body from the rear).

Determining the existence of self-defense is a question of fact for the jury. *See Jordan,* 656 N.E.2d at 818 (citing *Bell v. State,* 486 N.E.2d 1001, 1004 (Ind.1985)). It is also within the jury's province to resolve any inconsistencies in the evidence, *DeBruhl v. State,* 544 N.E.2d 542, 546 (Ind.Ct.App. 1989), and assess the credibility of witnesses. *Stowers v. State,* 657 N.E.2d 194, 200 (Ind.Ct.App.1995), *trans. denied* (1996). Although there was conflicting testimony regarding the events that took place at Taco Bell, the jury chose to believe the State's witnesses and give greater weight to their testimony. From such evidence, the jury could have concluded beyond a reasonable doubt that Johnson did not shoot Emmert in self-defense, and we will not disturb their decision on appeal.

Affirmed.

SULLIVAN, J., and SHARPNACK, C.J., concur.

---

9. Indiana Rule 405(b) is identical to Federal Rule 405(b).