George DOZIER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9710–CR–671.

Court of Appeals of Indiana.

April 21, 1999.

Richard Kammen, James T. Flanigan, McClure, McClure & Kammen, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RUCKER, Judge

After a bench trial George Dozier was convicted of carrying a handgun on school property without a license, a Class C felony[1] and dangerous possession of a firearm, a Class A misdemeanor.[2] He now appeals raising two issues for our review which we rephrase as (1) was the evidence sufficient to rebut Dozier's defense of necessity, and (2) did Dozier's conviction violate an Indiana Constitutional provision permitting citizens to bear arms.

The record shows that Dozier, who was sixteen years of age at the time he was charged with the offenses giving rise to this appeal,[3] had been a member of a street gang since the age of ten. The gang is notorious for engaging in a variety of illegal activities including drug trafficking, gun dealing, intimidation, and extortion. As a gang member Dozier also engaged in illegal activity. He was also a disciplinary problem at both home and school. Sometime in September or October of 1995 Dozier decided to leave the gang. He quit associating with gang members and

---

1. Ind.Code § 35–47–2–1 and Ind.Code § 35–47–2–23.

2. Ind.Code § 35–47–10–5.

3. A person at least sixteen years of age charged with carrying a handgun without a license or dangerous possession of a firearm is subject to adult criminal court jurisdiction. *See* Ind.Code § 31–30–1–4(a)(9), (10).

refused to wear gang colors. The record shows that persons attempting to quit gang membership are at great risk from other gang members. The higher in rank a gang member is, the more serious the threat for leaving. Dozier had reached the second highest rank. Aware of the potential for death or serious bodily injury Dozier spoke with a number of adults about his decision to disassociate himself from the gang and sought advice on how to best protect himself. Dozier's math tutor advised him to form a support group; a mental health counselor advised him to talk with his parents; and Dozier's football coach advised him that he would have to quit the gang on his own.

In the evening hours of November 1, 1995, Dozier received a telephone call at home from a gang member. Using street slang and gang terminology the gang member told Dozier that he was going to be killed. Dozier obtained a .9 millimeter handgun and took it with him to North Central High School the following day. After receiving a tip, School authorities confiscated the weapon. Dozier was subsequently arrested and charged with carrying a handgun without a license on school property and dangerous possession of a firearm. After a trial to the bench Dozier was found guilty as charged. The trial court sentenced Dozier to a suspended four-year term, gave him credit for time served in pretrial detention, and placed him on probation for the remaining period. This appeal followed. Additional facts are set forth below where relevant.

I.

Dozier does not contest that he carried a loaded .9 millimeter semi-automatic pistol into North Central High School. He argues however that he did so out of manifest necessity and that the State introduced insufficient evidence to prove otherwise. In order to prevail on a claim of necessity, the defendant must show (1) the act charged as criminal must have been done to prevent a significant evil, (2) there must have been no adequate alternative to the commission of the act, (3) the harm caused by the act must not be disproportionate to the harm avoided, (4) the accused must entertain a good faith belief that his act was necessary to prevent greater harm, (5) such belief must be objectively reasonable under all the circumstances, and (6) the accused must not have substantially contributed to the creation of the emergency. *Toops v. State*, 643 N.E.2d 387, 390 (Ind.Ct. App.1994). In order to negate a claim of necessity, the State must disprove at least one element of the defense beyond a reasonable doubt. *See Pointer v. State*, 585 N.E.2d 33, 36 (Ind.Ct.App.1992) (discussing State's burden in the context of an analogous self-defense claim). The State may refute a claim of the defense of necessity by direct rebuttal, or by relying upon the sufficiency of the evidence in its case-in-chief. *Id.* The decision whether a claim of necessity has been disproved is entrusted to the fact-finder. *Id.* Where a defendant is convicted despite his claim of necessity, this court will reverse the conviction only if no reasonable person could say that the defense was negated by the State beyond a reasonable doubt. *Id.*

The only element of the necessity defense at issue in this case is the "no adequate alternative to the commission of the act." *Toops*, 643 N.E.2d at 390. Pointing out that his life was in danger because he was attempting to quit a violent street gang and that the adults with whom he spoke gave no realistic guidance on how he might leave the gang without resultant harm, Dozier insists that he had no adequate alternative to protect himself other than carrying a handgun. Dozier maintains the only evidence the State introduced to rebut this claim involved events occurring after he was arrested on the instant charges. According to Dozier that evidence was not sufficient. The facts are these. Two months after his arrest Dozier was confronted by several gang members who were concerned that he would snitch to the authorities concerning gang activities. Shortly thereafter Dozier contacted a twenty-seven year-old adult gang member seeking assistance. Dozier explained that he intended to cause no trouble and simply wanted to get out of the gang. The adult member reassured Dozier that as long as he kept his mouth shut everything would be fine. Dozier experienced no problems with the gang thereafter. After concluding that

Dozier was guilty as charged the trial court commented that it "finds" Dozier could have contacted the adult gang member earlier to intervene on his behalf as an alternative to carrying a weapon to school. In his brief Dozier places great emphasis on the trial court's "finding" and advances a number arguments refuting the same.

Although characterized as a "finding" we view the trial court's remark as merely a partial explanation of the mental process in which the trial court engaged to reach the conclusion that Dozier was guilty as charged. Indeed in a criminal case the trial court is not required to make either findings of fact or conclusions of law. *Nation v. State*, 445 N.E.2d 565, 570 (Ind.1983). Thus, the focus of our inquiry is not upon the remarks the trial court makes in a bench trial after having reached the conclusion that a defendant is guilty. Rather the question is whether the evidence presented to the trial court as fact-finder was sufficient to sustain the conviction. When reviewing whether the State presented sufficient evidence to negate a defendant's claim of necessity, we apply the same standard of review used for all sufficiency of the evidence questions. We neither reweigh the evidence nor judge the credibility of witnesses. *Johnson v. State*, 671 N.E.2d 1203, 1209 (Ind.Ct.App.1996), *trans. denied.* Rather, we examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value to sustain the conviction, then it will not be set aside. *Id.*

Assuming for the sake of argument only that contacting the adult gang member was not an adequate alternative for Dozier carrying a weapon to school, we nonetheless find there was sufficient additional evidence before the trial court to conclude that Dozier had other viable and adequate alternatives. First, the record shows that Dozier had lov-

ing and supportive parents. And although advised to do so, Dozier never told his parents that he was attempting to quit the gang or that he had been threatened by the gang. Indeed the record is not clear whether his parents were even aware of his gang involvement. We can only speculate what action his parents may have taken had Dozier informed them that his life had been threatened. Second,' the gang member's threat was a criminal offense. Yet Dozier did not contact the police to report the incident. Again we decline to speculate on what action the police may have taken. Finally, the most obvious alternative available to Dozier was simply not to attend school the day after the threat and to contact school authorities explaining his absence. Dozier advances various arguments explaining why neither of the foregoing options was viable. We reject them summarily. The record shows that North Central High School is a public school in Indianapolis attended by over three thousand students. The School has been plagued by gang activity, and to avoid intimidation of students the School disallows the wearing of gang colors and other indicia of gang membership. There are armed guards stationed at the school, and periodically dangerous weapons and knives have been seized from the school's students. It is into this environment that Dozier introduced a loaded semiautomatic handgun. The potential for serious bodily injury or loss of life to innocent bystanders and other students was immense.[4] As the trial court observed:

> The finding of guilt on this case had to do with the harm that you exposed several thousand other students to when you brought that gun to school.... [T]here were children in that school that had nothing to do with your gang involvement who were exposed to harm.... I believed you were in fear and that you had a right to be in fear. I did not believe that your fear

---

4. During 1991, practically one-third of bystander shooting victims in New York were children 16 years old or younger. Paul J. Aroughati, *Imposing Homicide Liability on Gun Battle Participants for the Deaths of Innocent Bystanders*, 27 Colum. J.L. & Soc Probs. 467, 473 n. 28 (1994). For example, nine-year-old, Laketa Crosby was jumping rope in Chicago's Cabrini–Green housing project when she was shot and killed by a stray bullet from a gun fight between warring gangs. *Id.* at n. 29. Cristal Flores–Anguiano, an 11–year-old resident of South–Central Los Angeles, ran outside to buy ice cream from a passing truck when a gun fight arose between two feuding gangs, and she was wounded in the heart. *Id.*

extended or gave you the right to expose several thousand other children to potential life threatening harm.

R. at 637. We agree. When balancing the potential risks involved in this case it is apparent to us that any one of the alternatives referenced above would have been more adequate than taking a loaded gun to school. Indeed we can envision no set of facts supporting the proposition that a student carrying a handgun into a public school is ever an adequate alternative for self protection. The evidence in this case was sufficient to sustain Dozier's conviction.

## II.

■ Dozier next contends that regardless of the sufficiency of the evidence, his conviction should nonetheless be reversed because he had an Indiana constitutional right to possess a firearm. Article I § 32 of the Indiana Constitution provides "Right to bear arms.——The people shall have a right to bear arms, for defense of themselves and the State." The constitutional right to bear arms is not absolute. Our supreme court has determined "[t]he Legislature has the power, in the interest of public safety and welfare, to provide reasonable regulations for the use of firearms which may be readily concealed, such as pistols." *Matthews v. State,* 237 Ind. 677, 686, 148 N.E.2d 334, 338 (1958) (rejecting an Article I § 32 challenge to handgun legislation). The statutes at issue in this case require a person to have a license to carry a handgun, increase the class of the offense for carrying an unlicensed handgun on school property, and prohibit the possession of a handgun by a person under eighteen years of age. These statutes are in the interest of public safety and provide reasonable regulation for the use of handguns. Dozier's constitutional challenge thus fails.

Judgment affirmed.

GARRARD, J., and RILEY, J., concur.