## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 20 2016, 9:33 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Phillips
Boonville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Byron Early,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

December 20, 2016

Court of Appeals Case No.
87A01-1604-CR-992

Appeal from the Warrick Superior Court

The Honorable Amy Steinkamp Miskimen, Magistrate

Trial Court Cause No.
87D01-1508-CM-558

**Brown, Judge.**

[1] Byron Early appeals his conviction for operating a vehicle with an ACE of .08 as a class C misdemeanor. Early raises three issues which we consolidate and restate as:

I. Whether the trial court abused its discretion in admitting certain evidence; and

II. Whether the evidence is sufficient to sustain his conviction.

We affirm.

### Facts and Procedural History

[2] On August 5, 2015, Warrick County Sheriff's Deputy Daniel Boyd Bullock received a dispatch regarding a possible intoxicated driver in a particular vehicle on Libbert Road. Deputy Bullock observed a vehicle matching the description traveling east on High Pointe, followed the vehicle, confirmed the license plate, "saw him actually run a red light going east across Bell Road," activated his emergency lights, and conducted a traffic stop around midnight. Transcript at 17. Deputy Bullock approached the passenger side of the vehicle, smelled the odor of alcoholic beverages coming from Early, and observed that his eyes were bloodshot and glassy.

[3] Deputy Bullock asked Early to step out of the vehicle and saw a cooler full of beer in between the two seats and an open container in the driver's side door. Deputy Bullock asked him whether he would take a field sobriety test, and Early responded affirmatively. Early failed the horizontal gaze nystagmus test. Deputy Bullock then explained the walk and turn test, and Early lost his

balance while the instructions were given and was swaying. Early attempted the test on dry level ground, stopped walking to help balance himself, stepped off the line, and raised his arms more than six inches. He also failed the one leg stand test.

[4] Deputy Bullock then read Early an implied consent advisement and asked him if he would be willing to take a chemical test, and he agreed to do so. Deputy Bullock placed him in handcuffs, patted him down for weapons, placed him in his patrol vehicle, and transported him to the Warrick County Jail. Deputy Bullock checked to see if Early had anything to eat or drink or had any substances in his mouth, waited at least fifteen minutes, and then collected two samples from Early. The result of the test revealed "0.129 g/210L," and the printout indicated that Deputy Bullock began observing Early at 12:41 a.m. and showed a result time of 1:03 a.m. State's Exhibit 7.

[5] On August 6, 2015, the State charged Early with Count I, operating a vehicle with an ACE of .08 as a class C misdemeanor, and Count II, operating a vehicle while intoxicated as a class C misdemeanor. On March 2, 2016, the court held a bench trial. Deputy Bullock testified that he was certified to operate the EC/IR II instrument which analyzes the alcohol content in a sample. Without objection, Deputy Bullock testified that he asked Early if he had been drinking after approaching his car and that he said he "had a couple." Transcript at 17. After the testimony regarding the field sobriety tests, the prosecutor asked Deputy Bullock if Early volunteered any statements. Early's counsel objected to testimony regarding Early's statements based upon the lack

of a *Miranda* warning, and the court overruled the objection. Deputy Bullock testified that Early volunteered that he was at Piston's and that he needs to learn to say no because his friends were buying him drinks.

[6] Deputy Bullock testified that he was in the room with Early prior to his delivering a sample into the EC/IR II instrument for a minimum of fifteen minutes. On cross-examination, Deputy Bullock testified that a printout indicated that he moved his car out of the sally port at 12:34 a.m. and that the breath test started at 12:42 a.m. On redirect examination, he testified that he observed Early for at least fifteen minutes prior to Early's delivery of a sample into the EC/IR II instrument and that he had control of Early. Early testified that he operated a vehicle on August 5, 2015, and that he did not run a red light that evening.

[7] On March 4, 2016, the court found Early guilty as charged and issued a Verdict which contained Findings of Fact and Conclusions of Law and entered judgment of conviction on both counts. On March 31, 2016, the court held a sentencing hearing, merged Counts I and II and sentenced Early to sixty days at the Warrick County Security Center suspended to six months of reporting probation.[1]

---

[1] We note that in his statement of case, Early discusses only the charge of operating a vehicle with an ACE of .08 or more in violation of Ind. Code § 9-30-5-1(a), which provides that "[a] person who operates a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol but less than fifteen-hundredths (0.15) gram of alcohol per . . . two hundred ten (210) liters of the person's breath; commits a Class C misdemeanor." Early does not mention Count II, operating a vehicle while intoxicated as a class C misdemeanor. We also note that Early did not request a copy of the transcript from the March 31, 2016

The first issue is whether the trial court abused its discretion in admitting the breath test. Generally, we review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only when the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. We may affirm a trial court's decision regarding the admission of evidence if it is sustainable on any basis in the record. *Barker v. State*, 695 N.E.2d 925, 930 (Ind. 1998), *reh'g denied*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*.

Early argues that Deputy Bullock did not have reasonable suspicion to initiate a traffic stop. He argues that the stop was improper because Deputy Bullock did not observe him swerving and, while he testified that he observed Early run a red light, he agreed that there was no red light between Libbert Road and Bell Road on High Pointe. The State argues that, while Early cites to Deputy Bullock's testimony acknowledging the lack of a traffic light to suggest that he

sentencing hearing or include a copy of any sentencing order or abstract of judgment. Based upon Early's brief, which refers to only Count I, operating a vehicle with an ACE of .08 or more, we limit our discussion to his arguments on that charge.

recanted his claim of seeing Early drive through a red light, Deputy Bullock testified that Early drove through a red light "across Bell Road," not after Bell Road. Appellee's Brief at 13 (quoting Transcript at 17). The State also points to Deputy Bullock's testimony on redirect.

[10] To the extent Early suggests that the trial court abused its discretion by admitting evidence obtained as a result of the stop, we note that Deputy Bullock testified that he observed Early run a red light going east across Bell Road and that there was a red light at Bell Road. Based upon the record, we cannot say that the stop was improper. *See Meredith v. State*, 906 N.E.2d 867, 870 (Ind. 2009) ("An officer's decision to stop a vehicle is valid so long as his on-the-spot evaluation reasonably suggests that lawbreaking occurred.").

[11] Early appears to argue that the trial court abused its discretion by considering the breath test because, while Deputy Bullock testified that a suspect must be watched for a period of fifteen minutes before administering a breath test and that he initially testified that he did so, he later testified on cross-examination that the printout from the breath test indicated that the test began at 12:42 a.m., and that, if he was moving his car out of the sally port at 12:34 a.m., there were only eight minutes between 12:34 a.m. and 12:42 a.m. He concedes that he was restrained and most likely unable to place a foreign object in his mouth at this point in time, but asserts that "it is just another example of Deputy Bullock's biased and unreliable testimony." Appellant's Brief at 17.

[12] The Indiana Administrative Code provides:

The approved method that shall be followed in making an analysis of breath for ethanol using the Intox EC/IR II breath test instrument is as follows:

STEP ONE: The person to be tested must:

(A) have had nothing to eat or drink;

(B) not have put any foreign substance into his or her mouth or respiratory tract; and

(C) not smoke;

within fifteen (15) minutes before the time the first breath sample is taken or at any time from the taking of the first breath sample until after the taking of the final breath sample.

260 IAC 2-4-2.

[13] On direct examination, Deputy Bullock testified that he checked to see if Early had anything to eat or drink or had any substances in his mouth, waited at least fifteen minutes, and then collected two samples from Early. He testified that he was in the room with Early prior to him delivering a sample into the EC/IR II instrument for a minimum of fifteen minutes. On cross-examination, he testified that the time of eight minutes was not contradictory to his earlier testimony that he was in the room with Early for fifteen minutes before he began the test. He then clarified that he begins observing when the test begins. On redirect examination, Deputy Bullock testified that he observed Early for at least fifteen minutes prior to him delivering a sample into the EC/IR II

instrument and that he had control of him. While the printout from the EC/IR II instrument indicated a "Test Time" of 12:42 a.m., it also indicated that Deputy Bullock began observing Early at 12:41 a.m., that Early provided breath samples at 1:00 a.m. and 1:03 a.m., and a result of "0.129 g/210L" with a result time of 1:03 a.m. State's Exhibit 7. Based on the record, we cannot say the trial court abused its discretion by admitting the results of the breath test.[2]

## II.

[14] The next issue is whether the evidence is sufficient to sustain Early's conviction for operating a vehicle with an ACE of .08 as a class C misdemeanor. Early argues that the State failed to support its case with relevant evidence.

[15] We observe that the trial court entered findings of fact and conclusions thereon. "[I]n a criminal case the trial court is not required to make either findings of fact or conclusions of law." *Dozier v. State*, 709 N.E.2d 27, 30 (Ind. Ct. App. 1999) (citing *Nation v. State*, 445 N.E.2d 565, 570 (Ind. 1983)). Thus, the focus of our inquiry is not upon the remarks the trial court makes in a bench trial after having reached the conclusion that a defendant is guilty. *Id.* Rather the question is whether the evidence presented to the trial court as fact-finder was sufficient to sustain the conviction. *Id.* We neither reweigh the evidence nor

---

[2] To the extent Early argues that Deputy Bullock's testimony regarding any statements made by him should have been excluded because Deputy Bullock was required to read Early his *Miranda* rights, we conclude that any error in admitting such evidence was harmless error with respect to his conviction for operating a vehicle with an ACE of .08.

judge the credibility of witnesses. *Id.* (citing *Johnson v. State*, 671 N.E.2d 1203, 1209 (Ind. Ct. App. 1996), *trans. denied*). Rather, we examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value to sustain the conviction, then it will not be set aside. *Id.*

[16] The offense of operating a vehicle with an ACE of .08 as a class C misdemeanor is governed by Ind. Code § 9-30-5-1, which provides that "[a] person who operates a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol but less than fifteen-hundredths (0.15) gram of alcohol per . . . two hundred ten (210) liters of the person's breath; commits a Class C misdemeanor."

[17] The record reveals that Early operated a vehicle and that Deputy Bullock observed Early run a red light, conducted a traffic stop, smelled the odor of alcoholic beverages coming from Early, observed that his eyes were bloodshot and glassy, conducted field sobriety tests upon Early which he failed, and conducted a breath test on Early which revealed a result of "0.129 g/210L." State's Exhibit 7. We conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could have determined beyond a reasonable doubt that Early committed operating a vehicle with an ACE of .08 as a class C misdemeanor.[3]

---

[3] Early also argues that Deputy Bullock changed his testimony numerous times, that his demeanor in the courtroom demonstrated hostility towards Early's counsel, and that allowing Deputy Bullock to repeatedly resist

## Conclusion

For the foregoing reasons, we affirm Early's conviction.

Affirmed.

Mathias, J., concurs.

Robb, J., concurs in result without opinion.

---

providing a conclusive and/or responsive answer to a leading question and allowing him to repeatedly impeach his own testimony without an admonishment from the trial court is reversible error and tantamount to limiting his efforts to receive a fair and impartial trial. Early's counsel referred to a history with Deputy Bullock, and the trial court found that none of the history was relevant, and the court at one point stated: "This is about this case, this case only and this trial only. Now, let's keep our questions simple. Let's keep our answers directly to the questions . . . ." Transcript at 57. We cannot say that reversible error occurred.