## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 11 2017, 6:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald R. Shuler
Barkes Kolbus Rife & Shuler, LLP
Goshen, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill
Attorney General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Billy T. Reames,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 11, 2017

Court of Appeals Case No.
20A03-1606-CR-1332

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Trial Court Cause No.
20C01-1505-F3-18

**Barnes, Judge.**

# Case Summary

Billy Reames appeals his conviction and sentence for Level 3 felony robbery while armed with a deadly weapon and the finding that he is an habitual offender. We affirm.

# Issues

The issues before us are:

I. whether there is sufficient evidence to sustain Reames's conviction for Level 3 felony robbery; and

II. whether his twenty-two year sentence is inappropriate.

# Facts

On February 4, 2015, Dennis Smith went to a friend's residence to have some tattoo work done. Several other persons also were present at the residence, including Reames and seventy-four-year-old Irma Geaugh. Smith was not previously acquainted with Reames. After a while, Geaugh asked Smith to drive her to the grocery store, and he agreed to do so. Reames asked Smith to buy some cigarettes for him as well, but Smith instead invited Reames to come along with them.

Smith's vehicle was a 2000 Jeep Cherokee that he had purchased in December 2014. After purchasing the Jeep, Smith had made a number of improvements to it, including installing a tachometer, aluminum rims, and snow tires, and

enhancing the stereo system. The total cost of the improvements was approximately $2,500.

[5] Smith first drove Geaugh to the nursing home where her husband resided. She briefly visited with her husband while Smith and Reames waited in the Jeep. Smith then drove Geaugh to the grocery store. Smith and Reames again stayed outside in the Jeep while Geaugh went inside and shopped. Reames was sitting in the front passenger seat next to Smith. Smith was proud of his stereo system and showed it off to Reames by turning it up loud.

[6] After a period of time, Reames suddenly turned to Smith and said, "Get the hell out of the car." Tr. p. 58. Smith was dumbfounded at first. Reames repeated his demand that Smith get out of the car, and Smith saw that Reames was pointing a knife, which had a three-and-a-half to four-inch blade, at him. Reames then told Smith to get out "or I'm going to gut you like a pig." *Id.* Smith was paralyzed with fear while Reames repeatedly demanded that he get out of the car. Finally, Reames pulled the keys out of the ignition, and Smith got out. Reames drove away quickly. Smith ran inside the grocery store, found Geaugh in the checkout line, and told her that Reames had drawn a knife on him and taken his Jeep. Geaugh noticed that Smith was "all upset and distraught." *Id.* at 103.

[7] Police found Smith's Jeep the next day abandoned in a snow bank and took it to an impound lot. The Jeep was inoperable because the engine was "blown up," and Smith had to pay to have it towed to his home. *Id.* at 66. One of the

fenders was damaged, and the back doors and driver's side door would not open. Additionally, the interior of the vehicle was heavily damaged, the tachometer was damaged, the stereo equipment had been removed, and some toys belonging to Smith's son that were in the vehicle were gone.

The State charged Reames with Level 3 felony robbery while armed with a deadly weapon. Additionally, the State alleged that Reames was an habitual offender. Reames elected to be tried by the bench and also waived any trial with respect to whether he was an habitual offender. After trial, the trial court issued a written order finding Reames guilty of Level 3 felony robbery. The order stated in part, "the Court believes that the weight of the evidence tips in favor of the testimony of Mr. Smith and the Court believes the testimony of Mr. Dennis Smith." App. p. 47. The trial court entered judgment of conviction accordingly and found that Reames was an habitual offender. It imposed a sentence of twelve years for the conviction, with one year suspended, and enhanced that sentence by ten years for the habitual offender finding. Reames now appeals.

## Analysis

### I. Sufficiency of the Evidence

Reames first contends there is insufficient evidence to support his conviction for Level 3 felony robbery. When addressing a claim of insufficient evidence, we must consider only the probative evidence and reasonable inferences supporting the conviction. *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016). It is the fact-

finder's role, not ours, to assess witness credibility and weigh evidence to determine whether it is sufficient to support a conviction. *Id.* "It is not necessary that the evidence 'overcome every reasonable hypothesis of innocence.'" *Id.* (quoting *Moore v. State*, 652 N.E.2d 53, 55 (Ind. 1995)). "'[E]vidence is sufficient if an inference may reasonably be drawn from it to support the verdict.'" *Id.* (quoting *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007)). However, "[e]vidence sufficient only to establish a mere suspicion of guilt is not sufficient to support a conviction." *Id.* at 135.

[10] In order to convict Reames of Level 3 felony robbery as charged, the State was required to prove that he knowingly or intentionally took property from Smith by either using or threatening the use of force on any person or by putting any person in fear, and that Reames was armed with a deadly weapon while doing so. *See* Ind. Code § 35-42-5-1. Reames does not deny that he took Smith's Jeep, but contends there is insufficient evidence that he threatened Smith or placed Smith in fear, or that he was armed with a deadly weapon.[1]

[11] A conviction may be based upon the uncorroborated testimony of a single witness. *Sallee*, 51 N.E.3d at 134-35. Here, Smith testified quite clearly that Reames threatened to "gut" him with the knife Reames displayed and as to his fear. Tr. p. 58. Smith's testimony was partially corroborated by Geaugh's testimony, who described Smith being "upset and distraught" and telling her

---

[1] Knives clearly qualify as a "deadly weapon," even pocket knives. *Hollowell v. State*, 707 N.E.2d 1014, 1020-21 (Ind. Ct. App. 1999).

that Reames had just taken his Jeep after drawing a knife on him. *Id.* at 103. Reames contends this testimony was insufficient because no one else testified as to having seen Reames with a knife on that or any other day and because Smith denied having threatened Reames with a knife. These clearly are invitations to reweigh the evidence and judge witness credibility, which we cannot do.[2]

[12] Reames also suggests that the trial court applied a preponderance of the evidence burden of proof upon the State rather than the required proof beyond a reasonable doubt. He directs us to the trial court's written statement that "the Court believes that the weight of the evidence tips in favor of the testimony of Mr. Smith . . . ." App. p. 47. We are not convinced that this statement indicates the trial court applied the incorrect burden of proof. Regardless, a trial court is not required to make findings of fact or conclusions of law in a criminal case, and any remarks or partial explanations it gives as to its mental processes in finding a defendant guilty are not binding. *Dozier v. State*, 709 N.E.2d 27, 30 (Ind. Ct. App. 1999). We focus not upon remarks the trial court makes following a bench trial but rather solely upon whether the evidence presented to the trial court as fact-finder was sufficient to sustain the conviction. *Id.* The evidence here clearly was sufficient.

---

[2] Reames does not develop any argument that Smith's testimony should be disregarded as incredibly dubious.

## II. Sentence

[13] Reames also argues that his twenty-two-year sentence is inappropriate under Indiana Appellate Rule 7(B) in light of his character and the nature of the offense. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

[14] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[15] The sentencing range for a Level 3 felony is between three and sixteen years. I.C. § 35-50-2-5(b). An habitual offender enhancement for a Level 3 felony may range between six and twenty years. I.C. § 35-50-2-8(i)(1). Thus, the minimum sentence Reames faced here was nine years and the maximum was thirty-six years. By imposing a sentence of twelve years for Reames's conviction and enhancing it by ten years, the trial court imposed a sentence that was in the middle range of possible sentences.

[16] Turning first to the nature of the offenses, Reames contends that there was nothing egregious or extraordinary about it. We disagree. Reames took advantage of the kindness of a relative stranger in accepting Smith's offer to take him to buy cigarettes. And, Reames did much more than take Smith's vehicle. After successfully stealing Smith's Jeep by threatening to stab him, Reames or someone working in concert with Reames proceeded to render it inoperable and heavily damaged its interior and exterior. Also, items that were inside the vehicle were stolen, including the stereo system and toys belonging to Smith's son. Nothing regarding the nature of the offense would warrant a reduction in Reames's sentence.

[17] As for Reames's character, there is nothing redeeming about it. He has had nearly-constant interaction with the criminal justice system beginning in 1996, when he was thirteen years old, with an arrest for shoplifting. Also as a juvenile, he had adjudications for truancy, battery, theft, receiving stolen property, and sniffing a substance. Since 2000, when he was first tried as an adult, Reames has had one conviction for Class C felony receiving stolen auto

parts, three convictions for Class D felony auto theft, a conviction for Class D felony receiving stolen property, a conviction for Class D felony residential entry, two convictions for Class A misdemeanor resisting law enforcement, two convictions for Class A misdemeanor operating while intoxicated, a conviction for Class A misdemeanor conversion, and a conviction for Class C misdemeanor violating restrictions on pseudoephedrine purchases. He violated probation twice while serving sentences in earlier cases. Reames's criminal history extends well beyond the minimum necessary to support the habitual offender finding.

[18] Reames also has a continuous record of substance abuse dating back to the age of ten or twelve, when he first used marijuana. In addition to marijuana, he has abused synthetic marijuana, alcohol, cocaine (powder and crack), heroin, LSD, methamphetamine, and prescription pills. He had been drinking alcohol and smoking marijuana before committing the present offense. Prior efforts to combat Reames's addictions, including receiving addictions counseling in the Department of Correction, clearly have failed, as have multiple other rehabilitation attempts. As the trial court stated, "all other sanctions have proved ineffective in rehabilitating this Defendant; said sanctions included probation, fines, costs, boot camp, work release, drug treatment, home arrest, shelter care, restitution, drug court, shoplifting clinic, parent meeting and short term incarceration at the Indiana Department of Correction." App. p. 72-73.

[19] We acknowledge the difficulties that drug addiction can cause, particularly when it begins at a very young age, and that treatment in lieu of harsh

punishment can be preferable in some instances. However, such treatment has been attempted multiple times with Reames, it has failed every time, and he continues to lead a life of crime. There comes a point where an extended period of incarceration may be necessary in order to protect the public from an addict's repeated criminal behavior against other persons. It is logical to conclude that point has been reached with Reames, given his numerous convictions. His sentence of twenty-two years, with one year suspended, is not inappropriate in light of his character and the nature of the offense.

## Conclusion

[20] There is sufficient evidence to sustain Reames's conviction for Level 3 felony robbery while armed with a deadly weapon, and his sentence is not inappropriate. We affirm.

[21] Affirmed.

Bailey, J., and Riley, J., concur.