# FOR PUBLICATION



**FILED**

Apr 17 2014, 9:00 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JESSE R. DRUM**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHARRISE BELTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1310-CR-487 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable James A. Joven, Judge
Cause No. 49F13-1303-CM-16642

**April 17, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

On March 7, 2013, Appellant-Defendant Charrise Belton was riding in a vehicle driven by her then-boyfriend, Tacolby Calloway. Belton waited in the vehicle while Calloway entered a home located near the intersection of 33rd Street and Orchard Avenue in Indianapolis. Calloway appeared to be under the influence of drugs when he exited the home approximately thirty minutes later. Calloway subsequently became upset with Belton and threatened to assault her. Fearing for her safety, Belton drove away from Calloway. Belton was stopped by a member of the Indianapolis Metropolitan Police Department for a traffic infraction approximately one-half of a mile away.

The State subsequently charged Belton with Class A misdemeanor driving while suspended. Following a bench trial, the trial court found Belton guilty as charged and imposed a 365-day suspended sentence. On appeal, Belton contends that the State did not present sufficient evidence to negate her necessity defense. Concluding that the evidence presented by the State was insufficient to negate Belton's necessity defense, we reverse.

**FACTS AND PROCEDURAL HISTORY**

On the evening of March 7, 2013, Belton was a passenger in a vehicle driven by her then-boyfriend, Calloway. Calloway drove the vehicle to a home located near the intersection of 33rd Street and Orchard Avenue in Indianapolis. Belton stayed in the vehicle while Calloway entered the home.

Belton observed that Calloway appeared to be under the influence of drugs when he returned approximately thirty minutes later. Specifically, Belton believed that Calloway was

2

under the influence of embalming fluid because she "could smell it and [she] could tell by his demeanor." Tr. p. 9. Upon exiting the home, Calloway appeared "aggravated because he had [had] a dispute with one of the guys that were … that was getting high with him." Tr. p. 10 (brackets added, ellipsis in original).

Calloway soon turned his aggression toward Belton and began directing insults at her. When Belton indicated that she might leave Calloway if he did not calm down, Calloway threatened to "whoop [Belton's] a[**]." Tr. p. 11. Calloway repeated his threat to assault Belton numerous times. Belton feared that Calloway would follow through on his threat to assault her because he had previously done so on at least two separate occasions. Belton feared "that it would be worse" on "that particular night" because Calloway "was on drugs." Tr. p. 12. Based on Calloway's demeanor, Belton "knew" that Calloway would assault her that night if she stayed. Tr. p. 12.

At some point, Calloway put the key in the ignition as if he were going to start the vehicle in which he and Belton were sitting and drive away. Calloway, however, exited the vehicle without explanation and went back inside the home. Fearing for her safety, Belton took advantage of the opportunity by sliding over and into the driver's seat and driving away. Belton, who was "in a neighborhood [she] didn't know nothing about[,]" decided to drive in the direction of 16th Street and Bellefontaine Street, where some of her family resided. Tr. p. 12.

After Belton had been driving for approximately seven or eight blocks, or approximately one-half of a mile, Indianapolis Metropolitan Police Officer Jason Ross

3

initiated a traffic stop of the vehicle driven by Belton because it appeared that the vehicle's registration was expired.[1] During the traffic stop, Belton admitted that her driver's license was suspended and stated that she only drove because of her need to remove herself from the situation involving Calloway. Finding no reason to doubt the veracity of Belton's explanation, Officer Ross "issued [Belton] a summons in lieu of arresting her and allowed her to leave the [vehicle] parked where it was … on the side of the road." Tr. p. 6 (ellipsis added).

On March 23, 2013, the State charged Belton with Class A misdemeanor driving while suspended. On September 11, 2013, following a bench trial, the trial court found Belton guilty as charged and sentenced her to a 365-day suspended sentence. The trial court also ordered that Belton's driver's license be suspended for a period of ninety days. This appeal follows.

## DISCUSSION AND DECISION

Belton does not contest that she drove a vehicle while her driver's license was suspended. She argues, however, that she did so out of manifest necessity and that the State failed to present sufficient evidence to negate her necessity defense.

> In order to prevail on a claim of necessity, the defendant must show (1) the act charged as criminal must have been done to prevent a significant evil, (2) there must have been no adequate alternative to the commission of the act, (3) the harm caused by the act must not be disproportionate to the harm avoided, (4) the accused must entertain a good faith belief that his act was necessary to prevent greater harm, (5) such belief must be objectively reasonable under all the circumstances, and (6) the accused must not have substantially contributed to the creation of the emergency. *Toops v. State*, 643 N.E.2d 387, 390 (Ind. Ct.

---

[1] Upon further investigation, Officer Ross determined that the vehicle's registration was not expired.

4

App. 1994). In order to negate a claim of necessity, the State must disprove at least one element of the defense beyond a reasonable doubt. *See Pointer v. State*, 585 N.E.2d 33, 36 (Ind. Ct. App. 1992) (discussing State's burden in the context of an analogous self-defense claim). The State may refute a claim of the defense of necessity by direct rebuttal, or by relying upon the sufficiency of the evidence in its case-in-chief. *Id*. The decision whether a claim of necessity has been disproved is entrusted to the fact-finder. *Id*. Where a defendant is convicted despite [her] claim of necessity, this court will reverse the conviction only if no reasonable person could say that the defense was negated by the State beyond a reasonable doubt. *Id*.

*Dozier v. State*, 709 N.E.2d 27, 29 (Ind. Ct. App. 1999). On appeal, our review is centered on whether the evidence presented to the trial court as fact-finder was sufficient to sustain the conviction. *Id*. at. 30.

When reviewing whether the State presented sufficient evidence to negate a defendant's claim of necessity, we apply the same standard of review used for all sufficiency of the evidence questions. We neither reweigh the evidence nor judge the credibility of witnesses. *Johnson v. State*, 671 N.E.2d 1203, 1209 (Ind. Ct. App. 1996), *trans. denied*. Rather, we examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. *Id*. If there is substantial evidence of probative value to sustain the conviction, then it will not be set aside. *Id*.

*Id*.

In raising the necessity defense at trial, counsel for Belton presented evidence that Belton believed that it was necessary for her to drive away from Calloway in order to prevent a greater harm, *i.e.*, a physical assault on Belton from Calloway. Defense counsel argued that Belton's belief was reasonable in light of the fact that Calloway repeated his threat to physically assault Belton numerous times, he had physically assaulted her on at least two prior occasions, and Belton believed such assault would be worse than prior assaults because of the fact that Calloway was under the influence of what she believed to be embalming

fluid. Defense counsel further argued that Belton did not substantially contribute to the creation of the emergency and that she did not have an adequate alternative to driving, as she was in an unfamiliar area with an individual who was under the influence of drugs and was threatening to physically assault her. In addition, nothing in the record indicates that Belton caused any harm to others by driving away from the situation involving Calloway or was driving in an unsafe manner when Officer Ross initiated the traffic stop.

The trial court appeared to accept defense counsel's arguments regarding the emergent situation. However, in finding Belton guilty of the charged offense, the trial court stated the following:

> All right based on the evidence that's been presented and as admitted by Defense, the State has proven the elements of Driving While Suspended. Now the only question is, is the defense of necessity successfully interposed or not? While there may have been an emergent situation at the time when Miss Belton initially tried … initially drove away the Court does agree with the State that that emergent situation, that necessity abates at some point. Now what is that point? Is it seven or eight blocks? Is it further? Is it … does the defendant have to reach the destination that she was seeking or is there an alternative? The emergent situation and this is assuming that everything is to believed from Miss Belton (inaudible) about her abusive boyfriend, she escaped that situation. The emergent situation abated … the necessity abated upon escaping the reportedly abusive boyfriend. The better course of action may have been to go to a gas station or somewhere where she could have called police but was there a gas station within the seven or eight blocks? I don't know. I'm not familiar with that area and there's no evidence about that so I'm left to determine if the defense of necessity is successfully interposed between. I think that it is not. I think that Miss Belton, you could have gone somewhere away from your boyfriend in a manner where you could've stopped driving sooner than that.

Tr. pp. 18-19 (ellipses in original).

On appeal, Belton challenges the sufficiency of the evidence to sustain the trial court's

determination that the emergent situation had abated and that she had driven further than was necessary under the circumstances. Initially, we note that the State did not present any evidence at trial relating to whether Belton could have safely stopped driving at any point before she was stopped by Officer Ross. Belton testified that she was unfamiliar with the area of Indianapolis in which the incident with Calloway occurred and that she was driving in the direction of an area of Indianapolis in which some of her family resided. Officer Ross acknowledged that Belton had only driven approximately one-half of a mile from the home where she had left Calloway. In addition, the record is devoid of any evidence indicating that Belton passed a gas station or any other business where she could have sought refuge and called police before she was stopped by Officer Ross.

Generally, we agree with the trial court's determination that the circumstances making it necessary for Belton to drive would abate at some point. While the trial court offered what it termed a "better course of action" whereby Belton could have stopped driving sooner, the record is devoid of any evidence suggesting that the circumstances presumed by the court in stating said course of action existed in the area of Indianapolis in which Belton was driving. Our review of the record demonstrates that the trial court's determination that the circumstances had abated to a point where it was no longer necessary for Belton to drive in the instant matter are not based upon evidence presented by the State to negate Belton's necessity defense but rather on the trial court's speculation that Belton had driven further than necessary, *i.e.*, past a safe location where she could have stopped and called police. As such, we conclude that the evidence is insufficient to sustain the trial court's determination in

7

this regard.

The judgment of the trial court is reversed.

RILEY, J., and ROBB, J., concur.