## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 19 2015, 8:25 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Roger Hartman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 19, 2015

Court of Appeals Case No.
20A03-1411-CR-401

Appeal from the Elkhart Superior Court

The Honorable Evan S. Roberts, Judge

The Honorable Dean O. Burton, Magistrate

Cause No. 20D01-1210-FD-1206

**Brown, Judge.**

[1] Roger Hartman appeals his convictions for strangulation as a class D felony and battery as a class A misdemeanor. Hartman raises one issue, which we revise and restate as whether the trial court committed fundamental error in limiting his questions to potential jurors. We affirm.

## Facts and Procedural History

[2] Hartman's wife, Lynn Hartman, began a romantic relationship in July 2010 with Lauren Ketcham. On September 30, 2012, Lynn moved out of Hartman's residence and into the finished basement area of the residence of Gale Burtch, and Ketcham and the two children of Hartman and Lynn helped Lynn unpack her things. During the afternoon, Hartman arrived at Burtch's residence to make sure that the home where his children were going to be staying was safe. Hartman met Burtch, walked around the area in which Lynn would be living, and eventually left the house.

[3] Later in the evening when it was dark outside, Hartman returned to Burtch's residence and knocked on a sliding glass door to the basement. Lynn let him inside, and he yelled for his children "to get their things" and that "they were coming with him." Transcript at 147. Hartman called Lynn a liar and told the children that she was a lesbian. Hartman asked the children if they knew what that was, they shook their heads no, and he said that he was going to tell them. Ketcham tried to get Hartman's attention to tell him "not to do that." *Id.* at 150. Hartman "just kept yelling the same things over and over." *Id.* at 151. Hartman then looked at Ketcham and said "[y]ou're dead." *Id.* Hartman moved towards Ketcham, grabbed her finger, and bent it back, and Lynn came

over to attempt to pull him back. Hartman wrestled or threw Ketcham to the ground and placed his hands on her neck "very hard" for "probably 30 seconds," and Ketcham could not breathe and tried to catch her breath. *Id.* at 154. He eventually stepped back five or ten steps and talked to Lynn.

[4] After a short time, Hartman walked towards Ketcham, they both fell down together, he placed his knee on her chest and used his forearm against her neck, and Ketcham could not breathe. Hartman eventually released her, and at some point Burtch came downstairs and stated this was not going to happen in her home. Lynn and Hartman went outside through the sliding glass door.

[5] Ketcham sent a couple of text messages to Lynn's counselor,[1] who did not respond. A few minutes later, Lynn and Hartman came back inside through the sliding glass door, and Lynn said to Ketcham: "I don't love you, I never did. I never want to see you again." *Id.* at 159. Ketcham walked away and left the residence, drove to the police station and reported what had happened, and spoke with Lynn's counselor on the phone. After the incident, Lynn ended up moving back in with Hartman.

[6] On October 8, 2012, the State charged Hartman with strangulation as a class D felony and battery as a class A misdemeanor. On May 14, 2014, Hartman filed a trial disclosure identifying his potential witnesses, exhibits, and theories of

---

[1] Ketcham testified that at one point Lynn was working with the counselor to make her marriage work and then later to work on separation.

defense, which included self-defense, defense of another, necessity, lesser of wrongs, and a general denial. On May 30, 2014, the State filed a motion *in limine*, which stated, with respect to Hartman's theories of self-defense, defense of another, and necessity, that there was no evidence that Hartman, his children, or anyone other than Ketcham were in any danger of any harm and requested the court to restrict and restrain Hartman from any mention of such claims unless he presented some evidence relevant to the claims.

[7] A jury trial was held on June 3, and 4, 2014. Prior to *voir dire*, the court heard arguments on the State's motion *in limine*. Defense counsel stated that "the only reference to self defense, defense of another, and necessity that [he] would make would be during voir dire, reading parts of pattern jury instructions to the potential jurors and asking them . . . general questions about whether they agree with those laws and whether they would follow those if those are issues in the case" and that "[o]therwise, [he] would not be making any mention of any of these things." Transcript at 10. The court asked if the State was agreeable to "simply the reading of a pattern instruction during voir dire," and the State objected and argued that it would confuse the issues "in an attempt to persuade the jury more along the lines of a divorce case or custody or some sort of family issue that is simply not pertinent to a criminal trial." *Id.* at 11. Defense counsel responded that his expectation was that, "both through cross examination of the State's witnesses and if [] Hartman testified also through his testimony," that "there will be evidence, significant evidence, that he believed his children were in danger in being . . . in the presence or under control of the victim and

that is why this incident occurred" and "[t]hat's why these defenses are at issue in the case." *Id.* at 12. The court responded that, "based on what's been relayed . . . at this point saying 'in the presence or under the control of the victim,'" it was "not inclined at [that] point to allow any discussion relative to self defense or necessity." *Id.* The court also noted: "However, . . . if the evidence reflects that those are issues that are present that need to be raised at that point in time, if it's appropriate to have an instruction based on the evidence that's presented, then we can certainly address that in a final instruction." *Id.* The court also stated, "based on what's been presented at this point, I'm inclined to grant the Motion in Limine relative to any discussions of self defense, lesser or wrongs, or necessity" but was "leaving the door open if there's evidence that's presented during the trial that makes those theories relative then . . . an instruction may be appropriate in the final instruction."[2] *Id.* at 12-13.

[8] Hartman's counsel then argued that the court's ruling invited error and said that, in previous cases involving self-defense, he had "questioned jurors during voir dire about the views of Indiana Self Defense Law and it is not uncommon, in fact it is common, to have jurors say that they disagree with that law and that under no circumstances should someone be excused from using violence" and that "[i]f we can't ask them that during voir dire and we get to that in the trial it

---

[2] The court's chronological case summary entry for June 3, 2014, states that the State's motion *in limine* was granted.

could cause some real problems." *Id.* at 13.  The court confirmed its ruling and stated in part that, "based on what's been available to date and based on my understanding of this, it appears that that may cause confusion [and] delay" and that "certainly, we can change course on that if need be in a final instruction." *Id.* at 13-14.

[9]     In its case in chief, the State presented the testimony of Ketcham, Burtch, and the police officer who took Ketcham's statement at the police station.  Hartman did not testify or call witnesses.  In his closing statement, defense counsel argued there were inconsistencies in Ketcham's claims.  The jury found Hartman guilty as charged.  The court imposed an aggregate sentence of two years with one year to be served in community corrections and one year suspended to probation.

[10]    Hartman filed a motion to correct error stating that defense counsel had requested that he be permitted to read from pattern jury instructions and question potential jurors concerning the controversial legal concepts of self-defense, defense of another, and necessity, but that request was denied.  He argued that the denial was a violation of his due process rights and amounted to fundamental error.  He contended that, because of the court's surprise ruling, he was forced to change his planned defense and that the defense strategy was based almost entirely on Hartman testifying to his version of events, premised on self-defense, defense of another, and necessity, and then calling character witnesses to support his character for non-violence and for honesty.  Hartman further argued that, in defense counsel's experience, the legal doctrines of self-

defense, defense of another, and necessity "are controversial among jurors with almost half of potential jurors being eliminated (many for cause) because they disagree with the law." Appellant's Appendix at 31. Following a hearing, the court denied the motion to correct error.

## *Discussion*

The issue is whether the trial court committed fundamental error in limiting *voir dire*. Hartman concedes that he did not preserve his claim for appeal but maintains the trial court committed fundamental error when it did not permit him to question potential jurors regarding their general views of self-defense and defense of another. Hartman argues he was denied the right to a fair and impartial jury provided by Article 1, Section 13 of the Indiana Constitution, and that he was not required to prove his claim of self-defense before being allowed to question potential jurors. He also contends that self-defense was the primary issue for trial until the court's erroneous ruling forced a change in defense strategy and that, while it would have been a better practice to have presented his evidence of self-defense at trial or make a full offer of proof, his failure to do so does not change the fact that he intended to employ the defense and was denied the right to do so.

The State argues that self-defense was not an issue in this case and that Hartman did not present any self-defense evidence at his jury trial or ask for a self-defense instruction. The State maintains that Hartman "was not denied a fair trial because he could not probe the prospective jurors about an irrelevant defense." Appellee's Brief at 13.

[13]     To qualify as a fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Black v. State*, 829 N.E.2d 607, 610 (Ind. Ct. App. 2005) (citations omitted), *trans. denied*. The fundamental error exception to the waiver rule is an extremely narrow one, available only when the record reveals clearly blatant violations of basic elementary principles of due process, and the harm or potential for harm cannot be denied. *Id.*

[14]     The purpose of *voir dire* is to determine whether a prospective juror can render a fair and impartial verdict in accordance with the law and the evidence. *Id.* (citing *Joyner v. State,* 736 N.E.2d 232, 237 (Ind. 2000)). The right to an impartial jury is guaranteed by Article 1, Section 13 of the Indiana Constitution and is an essential element of due process. *Id.* A trial court has broad discretion in controlling the *voir dire* of prospective jurors. *Id.*

[15]     A defendant has a valid right to exclude persons who cannot be fair to his position when making a claim of self-defense. *Id.* at 611. In general, the ability to question prospective jurors regarding their beliefs and feelings concerning the doctrine of self-defense so as to determine whether they have firmly held beliefs which would prevent them from applying the law of self-defense to the facts of the case is essential to a fair and impartial jury. *Id.*

[16]     At the time of the offense, Ind. Code § 35-41-3-2 provided in part that a person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent

use of unlawful force. However, according to the statute, a person is not justified in using force if the person provokes unlawful action by another person with intent to cause bodily injury to the other person, or the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action. The statute applies to a person using reasonable force to protect the person or a third person. The amount of force a person may use depends on the urgency of the situation. *Harmon v. State*, 849 N.E.2d 726, 730-731 (Ind. Ct. App. 2006). Additionally, in order to prevail on a claim of necessity, a defendant must show the act charged as criminal must have been done to prevent a significant evil, there must have been no adequate alternative to the commission of the act, the harm caused by the act must not be disproportionate to the harm avoided, the accused must entertain a good faith belief that his act was necessary to prevent greater harm, such belief must be objectively reasonable under all the circumstances, and the accused must not have substantially contributed to the creation of the emergency. *Belton v. State*, 6 N.E.3d 1043, 1045-1046 (Ind. Ct. App. 2014).

[17] The evidence presented to the jury did not support claims of self-defense, defense of another, or necessity. There was no evidence upon which a reasonable trier of fact could have found Hartman validly acted in self-defense, defense of another, or necessity. These defenses were not issues in the case. Hartman has not demonstrated that the trial court's ruling impacted whether

the selected jurors could render a fair and impartial verdict in accordance with the evidence. Accordingly, we conclude that any error by the trial court in limiting *voir dire* was not so prejudicial to the rights of Hartman as to make a fair trial impossible. Hartman has not established fundamental error and is not entitled to a new trial.[3]

## *Conclusion*

[18] For the foregoing reasons, we affirm Hartman's convictions for strangulation as a class D felony and battery as a class A misdemeanor.

[19] Affirmed.

Crone, J., and Pyle, J., concur.

---

[3] Hartman also argues that *Black* and *Everly v. State*, 271 Ind. 687, 395 N.E.2d 254 (1979), require that he be granted a new trial. However, in *Black* the defendant testified he shot the victim in self-defense, *Black*, 829 N.E.2d at 609, and in *Everly* the defendant asserted that a homicide for which he was charged was committed in self-defense. *Everly*, 395 N.E.2d at 254. Hartman did not present evidence to the jury or the trial court which, if credited by the trier of fact, could have constituted a valid claim of self-defense.