## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Oct 07 2015, 8:36 am
CLERK
of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT

Karen M. Heard
Vanderburgh County Public Defender's Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jacob Lacy Higgins, <br> *Appellant-Defendant*, <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff*. | October 7, 2015 <br><br> Court of Appeals Case No. 82A01-1409-CR-426 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable Carl A. Heldt, Senior Judge <br><br> The Honorable, David D. Kiely, Judge <br><br> Trial Court Cause No. 82C01-1310-FA-1065 |

**Brown, Judge.**

[1] Jacob Lacy Higgins appeals his convictions and sentence for criminal recklessness as a class D felony and failure to return to the scene of an accident resulting in serious bodily injury as a class D felony. Higgins raises three issues which we revise and restate as:

I. Whether the State presented sufficient evidence to sustain Higgins's convictions; and

II. Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

### Facts and Procedural History

[2] On September 29, 2013, a fight broke out in the early morning hours in the parking lot of Show-Me's restaurant, involving eight to ten individuals and including Higgins, Zachary McCool, who is Higgins's cousin, Alexander Marshall, Daniel Jordan, and Christopher Poodry. Prior to his arrival at Show-Me's, Higgins had consumed alcohol while at a party with McCool. At Show-Me's, Higgins and McCool jumped on Marshall, who is Jordan's brother. Higgins and McCool took Jordan's brand new Chicago Bulls hat, and then entered a White Camaro. Higgins drove towards Poodry and then drove out of the restaurant parking lot. The other individuals involved in the fight went to the AMC parking lot where the fight continued.

[3] Higgins drove the car into the AMC parking lot and was driving back and forth. He performed a "burnout," was "driving crazy," and "he was doing donuts where tires were spinning." Transcript at 151, 191. While Higgins was driving, Poodry threw a rock at his car, which shattered the back window. Higgins

continued driving, then turned around, and drove toward Poodry. At some point in the parking lot, McCool opened the car door and entered the Camaro. Higgins turned and drove directly towards Jordan, Marshall, and Poodry, who were not standing in a straight line, and Higgins steered towards each individual and struck them one by one.

[4] Marshall was dragged underneath the car for three tenths of a mile. As a result, he suffered severe injuries, including scraped skin on his left arm and back, a dislocated leg, a broken cheekbone, the loss of his two front teeth, and a smashed right side of his face. He underwent two skin grafts, was left with permanent scarring covering half of his back and some of his right arm, he suffers from memory loss related to the event, but remembers being dragged underneath the Camaro and attempting to protect his face. Poodry suffered a slight concussion as a result of being struck by the Camaro, and Jordan suffered a cracked rib and road rash.

[5] When Sheriff's deputies responded to the scene, they observed skid marks, which appeared to have been the result of some type of aggressive maneuver, as well as broken lens lights in the northeastern area of the AMC parking lot. Two strands of human hair were recovered from the exterior of the Camaro's windshield, and the damage to the windshield was consistent with a person hitting it.

[6] On October 1, 2013, the State filed an information charging Higgins with Count I, attempted murder, a class A felony; Count II, criminal recklessness, a class D

felony; and Count III, failure to return to the scene of an accident resulting in serious bodily injury, a class D felony. On October 23, 2013, the State filed an habitual offender enhancement. On June 19, 2014, Higgins advised the State and the court that he would be asserting the defense of necessity at trial. On June 27, 2014, the State amended the charging information to include Count IV, battery by means of a deadly weapon as a class C felony. The court held a bench trial on July 18 and July 21, 2014, at which the State presented testimony and evidence consistent with the foregoing. At the conclusion of trial, the court found Higgins not guilty as to Counts I and IV and guilty as to Counts II and III. Higgins admitted to being an habitual offender, and entered a plea of guilty as to the habitual offender enhancement.

[7] On September 3, 2014, the court held a sentencing hearing. The court entered a judgment of conviction as to Counts II and III and found Higgins's criminal history as an aggravator. The court noted Higgins's prior felony convictions and that he had been revoked from probation. As mitigators, the court stated that "the victim, while this is certainly not a defense to the crime, the victim as well as others played some part in the confrontation which led up to this crime," and that "under the impression of a professional, [Higgins] has some diminished mental capacity which the Court finds is some but not of great mitigating circumstance." *Id.* at 346-347. The court sentenced him to two and one-half years executed at the Department of Correction ("DOC") under Count II, and to two and one-half years executed at the DOC under Count III to be served concurrently, and to an additional three and one-half years executed in

the DOC on the habitual offender enhancement, resulting in an aggregate sentence of six years.

## *Discussion*

### I.

The first issue is whether the State presented sufficient evidence to sustain Higgins's convictions. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

Higgins argues the State failed to prove that his action created a substantial risk of bodily injury to Marshall with respect to his conviction for criminal recklessness as a class D felony, and failed to negate the elements of his defense of necessity.

A. *Substantial Risk of Bodily Injury*

At the time of the offense, Ind. Code § 35-42-2-2 provided in part:

> (b) A person who recklessly, knowingly, or intentionally performs:
>
>> (1) an act that creates a substantial risk of bodily injury to another person . . . .
>>
>> \* \* \* \* \*
>
> commits criminal recklessness. Except as provided in subsection (c), criminal recklessness is a Class B misdemeanor.
>
> (c) The offense of criminal recklessness as defined in subsection (b) is:
>
>> \* \* \* \* \*
>>
>> (2) a Class D felony if:
>>
>>> (A) it is committed while armed with a deadly weapon . . . .

Subsequently amended by Pub. L. No. 158-2013, § 423 (eff. July 1, 2014). The State alleged that Higgins "did recklessly, knowingly, or intentionally perform an act, to wit: striking and dragging Alexander Marshall that created a substantial risk of bodily injury to Alexander Marshall while armed with a deadly weapon, to-wit: white Chevrolet Camaro . . . ." Appellant's Appendix at 10. Thus, the State was required to prove beyond a reasonable doubt that Higgins recklessly, knowingly, or intentionally struck and drug Marshall with a white Chevrolet Camaro, which was an act that created a substantial risk of bodily injury to Marshall. For purposes of the criminal recklessness statute, a "substantial" risk is a risk that has "substance or actual existence." *Boushehry v. State*, 648 N.E.2d 1174, 1177 (Ind. Ct. App. 1995) (quoting *Elliot v. State*, 560 N.E.2d 1266, 1267 (Ind. Ct. App. 1990)), *reh'g denied*.

[11] Higgins argues that the State failed to prove that his acts created a substantial risk of bodily injury. He asserts that the people surrounding him, who chased after his car and threw a rock at the car created the substantial risk of bodily injury.

[12] The State argues that the evidence is sufficient to support Higgins's conviction for criminal recklessness as a Class D felony, and it notes that Higgins concedes that a vehicle is a deadly weapon. The State maintains that Higgins escalated the ongoing physical altercation and that the other participants in the fight did not create a substantial risk of bodily injury while Higgins was in his car "fishtailing 360 degrees" in and around pedestrians. Appellee's Brief at 9.

[13] We note that Higgins does not dispute that his car constituted a deadly weapon, and he solely challenges whether the State presented sufficient evidence to prove that he created a substantial risk of bodily injury. The record reveals that Higgins had consumed alcohol prior to his arrival at the Show-Me's parking lot and played a role in the initial physical alteration that occurred there by taking Marshall's new Chicago Bulls hat before driving to the AMC parking lot. The record further reveals that Higgins drove aggressively near pedestrians and ultimately struck and dragged Marshall underneath his car. Marshall was hit by the car and testified that when he was underneath the car he "was being drug by my shoulder at first and then my head, I guess my head smacked the ground and I woke up and I was just trying to protect my face . . . ." Transcript at 232. The State also presented photographic evidence detailing the extent and severity of Marshall's injuries. Deputy Kirk Kuester testified that he "observed a red

colored substance under the front left of the vehicle, it appeared to be blood, but it was a red substance, appeared to be a clothing pattern along some of the parts of the undercarriage[.]" *Id.* at 108. Based on the foregoing evidence in the record, we cannot say that the evidence before the court was insufficient to demonstrate that Higgins created a substantial risk of bodily injury by driving aggressively near pedestrians and in striking and dragging Marshall underneath his Camaro. *See Beach v. State*, 512 N.E.2d 440, 445 (Ind. Ct. App. 1987) (affirming the defendant's conviction for criminal recklessness where he argued with a group of people in front of a house then drove his car on the sidewalk in front of that house and "narrowly missed" a pedestrian who was in his car's path), *reh'g denied*, *trans. denied*.

B. *Defense of Necessity*

[14] Higgins further contends that the State failed to present sufficient evidence to negate his claim that he acted out of necessity. When reviewing whether the State presented sufficient evidence to negate a defendant's claim of necessity, we apply the same standard of review used for all sufficiency of the evidence questions. *Belton v. State*, 6 N.E.3d 1043, 1046 (Ind. Ct. App. 2013).

> In order to prevail on a claim of necessity, the defendant must show (1) the act charged as criminal must have been done to prevent a significant evil, (2) there must have been no adequate alternative to the commission of the act, (3) the harm caused by the act must not be disproportionate to the harm avoided, (4) the accused must entertain a good faith belief that his act was necessary to prevent greater harm, (5) such belief must be objectively reasonable under all the circumstances, and (6) the accused must not have substantially contributed to the creation of the emergency.

*Id.* (citing *Toops v. State*, 643 N.E.2d 387, 390 (Ind. Ct. App. 1994)). In order to negate a claim of necessity, the State must disprove at least one element of the defense beyond a reasonable doubt. *Id.* The State may refute a claim of the defense of necessity by direct rebuttal, or by relying upon the sufficiency of the evidence in its case-in-chief. *Id.* The decision whether a claim of necessity has been disproved is entrusted to the fact-finder. *Id.* When a defendant is convicted despite [his] claim of necessity, this court will reverse the conviction only if no reasonable person could say that the defense was negated by the State beyond a reasonable doubt. *Id.* The Indiana Supreme Court has noted that necessity is an affirmative defense and that an affirmative defense "admits all the elements of the crime but proves circumstances which excuse the defendant from culpability." *Melendez v. State,* 511 N.E.2d 454, 457 (Ind. 1987).

[15] Higgins argues that he did not participate in the fight, that his cousin McCool was chased and beaten up by at least three people, that he drove away and was surrounded by other fight participants, that one of the participants threw a rock through the car's back windshield, and that, after McCool entered the car with him, Higgins exited as quickly as possible and did not return to the fight. Higgins asserts that he had a good faith belief that his action of driving away was necessary and reasonable under the circumstances and that the State failed to meet its burden of rebutting one of the necessary elements of his necessity defense.

[16] The State notes that Higgins does not cite to caselaw to prove that it was a necessity for him to hit three victims to prevent further damage to his car. The State maintains that Higgins's act of driving his car away and hitting three individuals was not done to prevent a significant evil; Higgins could have left the scene of the fight and not entered the AMC parking lot; his actions were disproportionate to the harm avoided; no evidence was presented that would tend to show he believed in good faith that his acts were necessary to prevent a greater harm; and that he "contributed to the creation of the emergency" by instigating and provoking the fight by taking Jordan's hat. Appellee's Brief at 13.

[17] The evidence most favorable to the conviction shows that Higgins played a role in provoking the fight and drove his car aggressively around the other fight participants. The evidence also shows that Higgins drove to the AMC parking lot where he struck Jordan, Marshall, and Poodry, who were not standing in a straight line, which required him to steer towards each individual, and that Marshall was dragged underneath the Camaro for three tenths of a mile. The court, as trier of fact, could find that there was an adequate alternative to Higgins's actions, that the harm caused by his actions was disproportionate to the harm avoided, that Higgins did not have a good faith belief that that his actions were necessary to prevent greater harm, that his belief that his actions were necessary was not objectively reasonable under all the circumstances, or that Higgins substantially contributed to the creation of the emergency. *See Dozier v. State*, 709 N.E.2d 27, 29-30 (Ind. Ct. App. 1999). Based upon the

record, the State presented sufficient evidence of probative value to negate Higgins's necessity defense.  We conclude that sufficient evidence supports Higgins's convictions.

## II.

[18] The next issue is whether his sentence is inappropriate in light of the nature of the offense and his character.[1]  Indiana Appellate Rule 7(B) provides that this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate.  *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[19] Our review of the nature of the offense reveals that Higgins participated in the fight, drove aggressively in the Show-Me's and AMC parking lots, and eventually struck Poodry, Jordan, and Marshall one by one.  As a result of being dragged underneath the Camaro for three tenths of a mile, Marshall suffered severe injuries including scraped skin on his left arm and back, a

---

[1] To the extent Higgins suggests that the court abused its discretion by failing to properly weigh the proposed mitigators of his diminished mental capacity and impulse control issues, the fact that the fight involved mutual combat, and his guilty plea to the habitual offender enhancement, we observe that the court found these to be mitigators.  This argument is, in essence, a request for this court to reweigh the mitigators, which we may not do. *See Anglemeyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007) (holding that the relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse of discretion), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).  We cannot say that the court abused its discretion in failing to identify Higgins's completion of Celebrate Recovery and Churches Embracing Offenders as mitigators.

dislocated leg, a broken cheekbone, and the loss of his two front teeth. Also, the right side of his face was smashed. Higgins's act of striking Poodry, Jordan, and Marshall one by one demonstrates a disregard for the lives of others.

[20] Our review of the character of the offender reveals that Higgins, who was born on December 14, 1988, had accumulated six prior felony convictions and had previously been revoked from probation. His felony convictions include the receipt of stolen property in 2008, operating a vehicle while intoxicated with an alcohol concentration equivalent to 0.15 or more in 2009 and again in 2011, operating a vehicle as an habitual traffic violator in 2013, and theft and possession of marijuana in 2013. Additionally, Higgins has three prior juvenile delinquent adjudications. Based upon the evidence presented at the sentencing hearing, we cannot say that the trial court imposed an inappropriate sentence on Higgins.

## *Conclusion*

[21] For the foregoing reasons, we affirm Higgins's convictions and sentences for criminal recklessness as a class D felony and failure to return to the scene of an accident causing serious bodily injury as a class D felony.

[22] Affirmed.

Pyle, J., concurs.

Crone, J., concurs in part and concurs in result in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jacob Lacy Higgins, *Appellant-Defendant*, | Court of Appeals Case No. 82A01-1409-CR-426 |
| v. | |
| State of Indiana, *Appellee-Plaintiff*. | |

**Crone, Judge, concurring in part and concurring in result in part.**

[23] I agree with my colleagues that the State presented sufficient evidence to sustain Higgins's convictions. As for Higgins's challenge to the appropriateness of his six-year sentence, counsel should be reminded that when a criminal defendant requests appellate review and revision of a criminal sentence pursuant to Appellate Rule 7(B), "an appellate court has the power to affirm, reduce, or *increase* the sentence." *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010) (emphasis added) (citing *McCullough v. State*, 900 N.E.2d 745, 750 (Ind. 2009)).

In light of Higgins's senseless decision to mow down Marshall with his car instead of leaving the area, the severity of Marshall's injuries, and Higgins's significant criminal history, if the State had asked us to increase the sentence, I would have been inclined to grant that request.[2]

[24] The evidence at trial established that Higgins struck and injured two other pedestrians with his Camaro, and it could have supported the more serious charges of class A felony attempted murder and class C felony battery by means of a deadly weapon. Regardless, the trial court would have been well within its discretion to impose consecutive sentences totaling four years on the class D felony convictions and four and a half years for the habitual offender enhancement, for a maximum aggregate sentence of eight and a half years.[3] Based on the heinousness of the offenses and his character, Higgins would have faced an uphill battle in persuading me that the sentence was inappropriate.

---

[2] A request by the State to increase a defendant's sentence is merely a factor in, and not a prerequisite for, an appellate court's consideration of an upward sentence revision. *See Akard*, 937 N.E.2d at 814 ("Although the defendant's raising of sentence reasonableness on appeal authorizes appellate consideration of whether the assigned sentence is inappropriately stern or lenient, we decline to increase the sentence *here*, particularly in the context of the State's request for no greater sentence at trial and its assertion on appeal that such is an appropriate sentence. These are strong indicators that the trial court sentence is not inappropriately lenient.") (emphasis added).

[3] *See* Ind. Code §§ 35-50-1-2 (total of consecutive terms of imprisonment for episode of criminal conduct not involving crimes of violence shall not exceed advisory sentence for felony that is one class of felony higher than most serious of felonies for which person has been convicted); 35-50-2-6 (advisory sentence for class C felony is four years); 35-50-2-8 ("The court shall sentence a person found to be a habitual offender to an additional fixed term that is not less than the advisory sentence for the underlying offense nor more than three (3) times the advisory sentence for the underlying offense."); and 35-50-2-7 (advisory sentence for class D felony is one and a half years).

But because the trial court was the sole factfinder at Higgins's trial and Appellate Rule 7(B) requires us to give "due consideration" to its sentencing decision, I reluctantly concur in the result reached by my colleagues.