## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 13 2020, 12:30 pm

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ian Daugherty,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 13, 2020

Court of Appeals Case No.
19A-CR-2015

Appeal from the Marion Superior Court

The Honorable Charnette D. Garner, Judge

Trial Court Cause No.
49G09-1903-F6-11442

**Tavitas, Judge.**

# Case Summary

[1] Ian Daugherty appeals his conviction, after a bench trial, for escape, a Level 6 felony. We affirm.

# Issue

[2] The sole issue on appeal is whether sufficient evidence supports the conviction.

# Facts

[3] On March 19, 2019, Daugherty reported to Marion County community corrections ("MCCC") to enroll in electronic monitoring. MCCC provided Daugherty with an "Acknowledgment of Electronic Monitoring Terms and Conditions" form ("Intake Contract") that provided: "You must not tamper with, remove, damage or destroy the electronic monitoring equipment[ ]"; and "[i]n the event you believe your equipment is malfunctioning, you must contact the 24-hour Operations Center . . . ." Exhibit Vol. I pp. 13-14.

[4] An undetermined time later, Daugherty cut the monitor off his ankle. Thereafter, instead of wearing the monitor on his ankle, Daugherty carried it on his person. On March 22, 2019, Daugherty attended a sporting event with the electronic monitor in his pocket. During the event, Daugherty experienced "heart palpitations," breathing issues, and "pain in [his] heart[.]" Tr. Vol. I p. 18. Daugherty lost consciousness and was transported to Wishard Hospital.

[5] Special Deputy William Robertson ("Officer Robertson") learned that a Wishard patient was in possession of a removed community corrections ankle

monitor. Officer Robertson went to the patient's room and requested the patient's name. The patient—Daugherty—replied that his name was "Brandon Anderson." *Id*. at 10. Officer Robertson observed a Department of Correction ("DOC") identification card on the floor that bore the name, "Ian Daugherty." Officer Robertson contacted MCCC, which confirmed that Daugherty was subject to an electronic monitoring order. MCCC asked Officer Robertson to arrest Daugherty for escape.

[6] Officer Robertson read the *Miranda* advisements to Daugherty and asked whether Daugherty's name was, in fact, "Ian Daugherty." Daugherty "confirmed it was." *Id*. at 14. Officer Robertson placed Daugherty under arrest. Officer Robertson asked why Daugherty removed the ankle monitor. Daugherty denied doing so and claimed "he had passed out due to being intoxicated . . . and [ ] somebody [ ] tr[ied] to steal [the ankle monitor] by cutting it off." *Id*. Officer Robertson confirmed that medical personnel did not cut the ankle monitor off Daugherty's ankle in the course of treating Daugherty.

[7] On March 25, 2019, the State charged Daugherty with escape, a Level 6 felony. The trial court conducted a bench trial on July 15, 2019. Officer Robertson testified to the foregoing facts. Case manager Jalen Reid of MCCC testified that Daugherty initialed and signed the Intake Contract, which explicitly prohibited any tampering with the ankle monitor and which also provided contact information to be used in the event that the ankle monitor malfunctioned.

Daugherty testified that: (1) he cut off the ankle monitor because it caused him "major pain[,]" it "was cutting into [his] ankle and it was bleeding[,]" and he "could not take another step with that thing on"; (2) he did not notify MCCC of his problems with the ankle monitor because he "never had an opportunity to get a telephone"; and (3) he lied to Officer Robertson to avoid being assessed a replacement fee for the monitor. *Id.* at 19. Daugherty was convicted as charged. The trial court sentenced Daugherty to 365 days of work release through community corrections. Daugherty now appeals.

## Analysis

Daugherty does not deny that he cut off his ankle monitor. He argues, however, that he did so out of manifest necessity and that the State failed to negate his necessity defense. When reviewing whether the State presented sufficient evidence to negate a defendant's claim of necessity, we apply the same standard of review used for all sufficiency of the evidence questions. We neither reweigh the evidence nor judge the credibility of witnesses. *Belton v. State,* 6 N.E.3d 1043, 1046 (Ind. Ct. App. 2014). Rather, we examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value to sustain the conviction, then it will not be set aside. *Id.*

To establish a necessity defense, a defendant must show the following:

> (1) the act charged as criminal was the result of an emergency and was done to prevent a significant harm;

(2) there was no adequate alternative to the commission of the act;

(3) the harm caused by the act was not disproportionate to the harm avoided;

(4) the Defendant had a good-faith belief that his/her act was necessary to prevent greater harm;

(5) the Defendant's belief was objectively reasonable under all the circumstances of the case; and

(6) the Defendant did not substantially contribute to the creation of the emergency.

*Hernandez v. State*, 45 N.E.3d 373, 377 (Ind. 2015).

Daugherty maintains that he removed the ankle monitor because it caused him extreme pain, bleeding, impossibility of movement, and scarring. To negate a claim of necessity, the State must disprove at least one element of the defense beyond a reasonable doubt. *Belton*, 6 N.E.3d at 1046. The State may refute a claim of the defense of necessity by direct rebuttal, or by relying upon the sufficiency of the evidence in its case-in-chief. *Id*. The decision regarding whether a claim of necessity has been disproved is entrusted to the fact-finder. *Id*. Where a defendant is convicted despite the claim of necessity, we will reverse the conviction only if no reasonable person could say that the State negated the defense beyond a reasonable doubt. *Id*.

[12] Here, the State presented evidence that negated several elements of Daugherty's necessity defense, including whether an adequate alternative existed to Daugherty's removal of the ankle monitor and whether the removal of the ankle monitor resulted from an emergency. The record reveals that Daugherty: (1) was aware of a remedy to address a malfunctioning ankle monitor; (2) failed to contact MCCC before he cut off the ankle monitor; and (3) had already cut off the monitor and was carrying it on his person before the March 2019 medical emergency. The trial court also heard dubious testimony that Daugherty lacked access to a phone at any time before he cut off the ankle monitor, as well as testimony that Daugherty lied to Officer Robertson about his identity and the circumstances surrounding the removal of the monitor.

[13] Considering the evidence and reasonable inferences therefrom, we find that the State submitted sufficient evidence to negate Daugherty's necessity defense beyond a reasonable doubt. *See Belton*, 6 N.E.3d at 1046.

## Conclusion

[14] The State presented sufficient evidence to rebut Daugherty's defense of necessity. We affirm.

[15] Affirmed.

Najam, J., and Vaidik, J., concur.